FILED

March 15, 2018

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 9:49 AM



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| JAMES FORIEST,<br>    **Employee,** | ) | |
| | ) | **Docket No. 2017-06-0413** |
| **v.** | ) | |
| | ) | |
| UNITED PARCEL SERVICE, INC.,<br>    **Employer,** | ) | **State File No. 92945-2016** |
| | ) | |
| **And,**<br>LIBERTY MUTUAL INSURANCE<br>COMPANY,<br>    **Carrier.** | ) | **Judge Joshua D. Baker** |

---

## COMPENSATION HEARING ORDER GRANTING BENEFITS

---

The Court convened a bifurcated compensation hearing on February 14, 2018, to adjudicate all issues except permanent disability and permanent medical benefits. The Court bifurcated this hearing at Mr. Foriest's request. UPS did not oppose bifurcation.

Mr. Foriest's private health insurance carrier denied coverage for surgery related to this injury, and Mr. Foriest's physician cannot determine permanent impairment pre-surgery. Thus, the present focus is whether Mr. Foriest's injury arose primarily out of and in the course and scope of his employment and, if the injury arose primarily out of his employment, the benefits to which he is presently entitled. For the reasons below, the Court holds Mr. Foriest suffered an injury that arose primarily out of the course and scope of his employment with UPS. The Court holds he is entitled to temporary total disability benefits, medical benefits, and the cost of medical care provided to date. The Court reserves the issues of permanent disability and permanent medical benefits.

## History of Claim

On October 11, 2016, Mr. Foriest, a UPS delivery-driver, completed roughly sixty stops of his dedicated route before parking his truck in an empty lot to take a break. His supervisor, Terry Holder, accompanied him on his route that day to evaluate Mr. Foriest's work. During the break, Mr. Foriest injured his right knee.

Mr. Foriest and Mr. Holder both testified that Mr. Foriest's right knee popped as he walked during his break. Beyond this agreement, their testimony on how the injury occurred differed significantly. Mr. Foriest said he hopped down from the rear of the truck, but Mr. Holder recalled that Mr. Foriest exited from the passenger side, which has steps. Mr. Foriest described his knee popped "almost immediately" after he exited the truck, while Mr. Holder recalled it popped after they were parked for ten to fifteen minutes.

Because both men previously had total knee replacements, Mr. Holder suggested the popping was innocuous and could improve with stretching, as his replaced knee had popped that morning, too. But "the third, maybe fourth, time" it popped, Mr. Holder testified, "I saw something protrude or push the skin out . . . that's what really kind of blew me away."

The following day, Dr. William Shell, the authorized treating physician, examined Mr. Foriest, concluded he had dislocated his kneecap and took him off work.[1] He referred him to his partner, Dr. Allen Anderson.

Dr. Anderson also believed Mr. Foriest had a dislocated kneecap. He concluded that the dislocation constituted a "new injury," unrelated to the previous total-knee replacement. He performed surgery to reconstruct the ligament around the patella, and Mr. Foriest underwent physical therapy. Dr. Anderson wrote that Mr. Foriest had "done really well [with his knee replacement] until this happened. And now he's basically incapacitated. Consequently, this is a new injury that is work-related."

UPS denied Mr. Foriest's claim, asserting Mr. Foriest was simply walking, unaffected by any hazard of his employment, when his injury occurred. Following an expedited hearing, this Court agreed and found Mr. Foriest failed to prove he suffered an acute injury that arose primarily out of his employment. The Court, however, stated that its decision did "not foreclose him from proving he suffered a gradual injury."

Meanwhile, Mr. Foriest continued with physical therapy and also continued to have knee pain and swelling. During physical therapy, Mr. Foriest suffered "an incident of giving way [of the knee] with an audible pop after which he had difficulty walking or

---

[1] Dr. Shell performed Mr. Foriest's previous total knee replacement in 2009.

bending his knee." After this physical therapy incident, Dr. Anderson reexamined Mr. Foriest's knee and determined it contained a "loose body." Dr. Anderson performed an arthroscopy and discovered a piece of "polyethylene." Following the arthroscopy, Dr. Anderson referred Mr. Foriest back to Dr. Shell.

In his deposition, Dr. Shell described the piece of polyethylene as a broken "post" from the total knee replacement.[2] Even though the condition is uncommon, Dr. Shell described the condition as a "recognized complication" of a total knee replacement. He described the problem as a "failure" of the total knee replacement and recommended surgical correction. Mr. Foriest's private medical insurance refused to pay for the procedure.

Dr. Shell testified he and Dr. Anderson "missed" the broken post when they first examined Mr. Foriest, and that Dr. Anderson likely could not have seen the broken post during the first surgery. Further, he had "no question that [Mr. Foriest's] current symptoms and the previous two operations by Dr. Anderson were due to his total knee failure." He pointed to a "low signal intensity body within the suprapatellar pouch" on an MRI taken twelve days after the alleged injury and said, "In retrospect, that was the broken off piece of polyethylene."[3] Dr. Shell testified unequivocally that the polyethylene became fatigued "over a long period of time" because of Mr. Foriest's physically demanding job, until it broke on October 11, 2016. He specifically identified Mr. Foriest's employment as "the major contributing factor" to the mechanism failure, explaining that activity "is a significant issue in component longevity."

Mr. Foriest and Mr. Holder, UPS employees for twenty-six and thirty-two years respectively, described the physical demands on a delivery-driver. Mr. Foriest estimated that he walks between nine and thirteen miles every day on every type surface, walks up and down hills and steps, and delivers packages to one hundred and fifty stops, climbing in or out of his truck roughly three hundred times per day during an eleven-hour shift. While Mr. Foriest testified the weight limit for lifting is 150 pounds, Mr. Holder clarified that "anything over 70 pounds, you're supposed to have either help or use your [safety] methods," such as sliding, rolling or walking an item to a dolly.

Mr. Foriest's wage statement indicated his average weekly wage was $1,140.78, resulting in a $760.55 compensation rate. Dr. Shell stated Mr. Foriest was unable to work from October 12, 2016, to the present because of the injury and said, "I don't see how he can perform his job until this is corrected." Mr. Foriest has not undergone surgery to correct the knee-replacement failure.

---

[2] Dr. Anderson passed away before giving his deposition in this case.

[3] Dr. Shell also explained that the post did not break during Mr. Foriest's physical therapy. Instead, the "sudden pain" Mr. Foriest experienced during physical therapy happened when the post "caught up under his patella, or moved around enough that it got in his joint[.]"

The Court permitted Mr. Foriest two weeks from the compensation hearing to file medical bills. He filed those with a summary on February 27, indicating $67,282.36 was billed to his private health insurance carrier and that his out-of-pocket expenses totaled $1,171.77. UPS raised no opposition to the bills or summary filed.

**Legal Principles and Analysis**

At a compensation hearing, Mr. Foriest must establish by a preponderance of the evidence that he is entitled to the requested benefits. *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2017). The employee in a workers' compensation claim has the burden of proof on all essential elements of the claim. *Scott v. Integrity Staffing Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015).

To prevail, Mr. Foriest must prove he suffered a compensable injury. Under Workers' Compensation Law, an "injury" means an injury by accident . . . arising primarily out of and in the course and scope of employment that causes death, disablement, or the need for medical treatment. An injury "arises primarily out of and in the course and scope of employment only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." An injury causes the need for medical treatment if shown to a reasonable degree of medical certainty that the injury contributed more than fifty percent (50%) in causing the disablement or need for medical treatment. *See* Tenn. Code Ann. § 50-6-102(14). An employee need not prove a single, sudden event caused his injury if the injury occurred from a set of incidents over an identifiable period of time. *Smiley v. Four Seasons Coach Leasing, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 28 at *22 (July 15, 2016).

Mr. Foriest argued that Dr. Shell's opinion provides expert medical evidence that his injury was primarily caused by "the pounding" his knee endured working for UPS during the seven years after his total knee replacement. He asserted that repeated work trauma to his right knee culminated in a disability on October 11, when the post from his total knee replacement broke. He relied on Dr. Shell's opinion that he has been totally disabled from work since his injury, that the injury required two surgeries by Dr. Anderson, and that the injury resulted in the present need for surgery. UPS argued this was an acute injury unrelated to the total knee replacement. UPS asserted that the post broke during physical therapy but provided no medical proof to support this assertion.

The Court finds Mr. Foriest suffered a gradual injury during the seven years he worked for UPS after his total knee replacement. Mr. Foriest and Mr. Holder provided testimony showing work at UPS involves extensive bending, walking and lifting. Dr. Shell testified this work activity was "the major contributing factor" that caused the knee

4

replacement to fail, resulting in Mr. Foriest's inability to work and need for additional treatment. While UPS argued this was an acute event unrelated to cumulative trauma, it did not offer countervailing expert medical evidence to rebut Dr. Shell's opinion. Without this, the Court is constrained to rule in favor of Mr. Foriest as judges are not well-suited to make an independent medical determination without expert medical testimony supporting the determination. *Scott* at *8. Similarly, parties cannot rely solely on their own medical interpretations to successfully support their arguments. *Lurz v. Int'lernational Paper Co.*, 2018 TN Wrk Comp. App. Bd. LEXIS 8, at *17 (Feb. 14, 2018). The Court therefore holds that Mr. Foriest suffered a gradual, compensable injury to his knee on October 11, 2016.

Having established compensability, Mr. Foriest payment seeks temporary total disability, temporary medical benefits, and payment of past medical expenses at this portion of the bifurcated compensation hearing.[4] The Court holds UPS must provide the requested relief.

Tennessee law requires an employer to provide "free of charge to the employee such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter[.]" Tenn. Code Ann. § 50-6-204(a)(l)(A). In providing the treatment, the Workers' Compensation Law requires an employer to "designate a group of three (3) or more independent reputable physicians . . . from which the injured employee shall select one (1) to be the treating physician." *Id.* at 50-6-204(a)(3)(A)(i). If an employer fails to provide a panel, it risks having to pay for all reasonable and necessary medical expenses incurred by an employee for treatment with an unauthorized physician, and also risks having to provide continuing care with the unauthorized physician. *See Young v. Young Elec.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 24, at *16-17 (May 25, 2016).

Here, UPS denied Mr. Foriest's claim from the outset, and he sought treatment from Drs. Shell and Anderson utilizing his private insurance until it declined to pay for further treatment. His private insurance paid $67,282.36 for treatment and Mr. Foriest paid $1,171.77 out of pocket  Dr. Shell testified that the treatment provided was reasonable and necessary. The Court holds that UPS shall be responsible for these medical expenses. Additionally, the Court appoints Dr. Shell as the authorized treating

---

[4] While the Court acknowledges prior decisions from the Appeals' Board hazarding against bifurcation, the Court agrees with the parties that bifurcation was the best option here as Mr. Foriest cannot procure the surgery necessary to heal his knee from either workers' compensation or his private insurance. Furthermore, the Court understands that Mr. Foriest cannot simply pay for the surgery out of pocket. The parties did not want to try the case under the lesser standard burden proof at an expedited hearing (likelihood of success on the merits), only to turn around and try it again under the higher burden of proof at a compensation hearing (preponderance of the evidence). Additionally, had Mr. Foriest not prevailed in proving compensability, the case would be over absent an appeal, and Mr. Foriest could then secure care under his private medical insurance after the finding of non-compensability.

physician for future care.

Concerning temporary disability benefits, Dr. Shell said Mr. Foriest's compensable October 11, 2016 injury totally disabled him from the day of the injury until the present. The Court, therefore, holds that Mr. Foriest proved his claim for temporary total disability benefits. *See Jones v. Crencor Leasing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015) (To be eligible for temporary disability benefits an employee must prove he became disabled from working due to a compensable injury, the causal connection between his injury and his inability to work, and the duration of his disability.). UPS shall pay Mr. Foriest accrued temporary disability benefits from October 12, 2016, through the date of this order in a lump sum—a period of seventy-four weeks and two days. UPS shall continue making payments to Mr. Foriest on a biweekly basis at his compensation rate of $760.55 per week until Dr. Shell releases him to return to work.

**IT IS, THEREFORE, ORDERED** as follows:

1. UPS shall pay Mr. Foriest the cost of his out-of-pocket expenses, $1,171.77, for medical treatment he received for his work injury. UPS shall also consult with Mr. Foriest's private health insurance carrier to arrange reimbursement to the carrier for the treatment provided to Mr. Foriest.

2. UPS shall provide ongoing medical treatment for Mr. Foriest with Dr. Shell serving as the authorized treating physician. Either Dr. Shell or Mr. Foriest shall submit the bills to Liberty Mutual for payment.

3. Mr. Foriest is entitled to temporary total disability benefits from October 12, 2016, through the date of this order, in the amount of $56,504.00, and going forward at a compensation rate of $760.55 per week until he reaches maximum medical improvement or is no longer entitled to temporary disability benefits under workers' compensation law.

4. The issues of permanent disability benefits and permanent medical benefits are reserved; therefore, this is not a final order addressing all contested issues in this claim.

**ENTERED MARCH 15, 2018.**

_____
**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

6

# **APPENDIX**

Exhibits:

1. Medical Records Filed February 1, 2018
2. 2009 Workers' Compensation Settlement Documents
3. First Report of Injury
4. Wage Statement
5. Mr. Foriest's Recorded Statement
6. Terry Holder's Accident Summary Statement
7. Dr. William Shell's Deposition Transcript
8. Expedited Hearing Transcript

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice filed
3. Expedited Hearing Order
4. Motion for Bifurcated Hearing
5. Order Setting Compensation Hearing
6. Joint Compensation Hearing Statement
7. Notice of Filing Medical Bills
8. Amended Notice of Filing Medical Bills

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this Order was sent to the following recipients by the following methods of service on March 15th, 2018.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Stephan Karr, Employee's Attorney | | | X | steve@flexerlaw.com |
| David Hooper, Employer's Attorney | | | X | dhooper@hooperzinn.com |

_____

**Penny Shrum, Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

8